**NOT FOR PUBLICATION**  **CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY REGIONAL COUNCIL OF CARPENTERS, | : <br> : Civil Case No. 11-2065 (FSH) <br> : |
| Plaintiff, | : **OPINION & ORDER** <br> : |
| v. | : July 27, 2011 <br> : |
| DYNASTY CONTRACTING, INC. *et al.,* | : <br> : |
| Defendants. | : <br> : |

**HOCHBERG, District Judge:**

**I.   INTRODUCTION**

This matter comes before the Court upon the motion of petitioner, New Jersey Regional Council of Carpenters (the "Union") to confirm an arbitration award entered in its favor and against respondents, Dynasty Contracting, Inc. ("Dynasty") and Vision General Construction ("Vision"). The Union contends, and the arbitrator found, that Dynasty and Vision were operated as a double-breasted employer in violation of a collective bargaining agreement entered into by Dynasty. Respondents contend that the award contains numerous factual and legal errors and should be set aside as a result.

**II.   BACKGROUND**

Dynasty was incorporated in 2001 by Paul Lowenstein. In the same year, Dynasty entered into a short form collective bargaining agreement, executed by Paul Lowenstein, with the Union. The short form agreement expressly incorporated by reference the terms of "every current

1

collective bargaining agreement between the Local Unions, Regional Councils, State Council and The Building Contractors Association of New Jersey governing wages, working conditions and payments to fringe benefit funds." Petition to Confirm Arbitration Award ("Petition"), Ex. A. The short form agreement also contained an evergreen clause, indicating that it would continue in effect and "be deemed renewed on the same basis" as the current collective bargaining agreement, "including any amendments and/or modifications thereto . . . unless at least 90 days before termination of the then current collective bargaining agreement, either party notifies the other in writing of cancellation" of the agreement. *Id*.

Vision was created in 2003 as a general contractor and was initially owned by Paul Lowenstein, Richard Lowenstein, Dave Marinaro, and John Struble. At the time, Dynasty was owned by Paul Lowenstein, Richard Lowenstein, and Dave Marinaro. Vision never signed a collective bargaining agreement with the Union, but nevertheless subcontracted carpentry work to union signatory contractors. John Struble ultimately became the sole owner of both Dynasty and Vision and was the sole owner in early 2010, when Vision served as the general contractor for the renovation of four Kohl's stores.

For the Kohl's project, Union carpentry superintendents were used to supervise non-Union carpentry subcontractors. The superintendents were paid Union wages and benefits by Dynasty, but were given business cards, credit cards, and company vehicles by Vision and supervised non-Union carpenters who were not paid Union wages and benefits. After hearing extensive testimony, the arbitrator concluded that Vision and Dynasty, which are nominally separate entities, were operating as one integrated entity with common management and ownership in violation of the double-breasting provision of the current collective bargaining

agreement.  Petition, Ex. C at 11-12.  That provision states "[t]he Employer represents that its members, officers, and supervisory personnel will not attempt to form or participate in the creation of or operation of new or double-breasted corporations for the purposes of avoiding the obligations of this Agreement."  Petition, Ex. B, Article XIX, Section 4.

### III.    STANDARD OF REVIEW

"District courts have very little authority to upset arbitrator's awards." *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995).  A court "may not overrule an arbitrator simply because it disagrees with the arbitrator's construction of the contract," but must enforce the award so long as "the arbitrator has *arguably* construed or applied the contract, regardless of [whether] . . . a court is convinced that [the] arbitrator has committed a serious error."  *News America Publications, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990) (emphasis in original).  An award should not be vacated so long as it "draws its essence" from a collective bargaining agreement.  *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597-99 (1960).

However, an award may be reversed where there is "no support at all in the record justifying the arbitrator's determinations."  *United Transp.*, 51 F.3d at 379.  An award should be vacated if its findings cannot "be rationally derived either from the agreement between the parties or from the parties submissions to the arbitrators" and the terms of the award are "completely irrational."  *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reins. Co.*, 868 F.2d 52, 56 (3d Cir. 1989) (quotations omitted).  An award may also be vacated if the arbitrator ignored the plain language of a contract, or essentially rewrote material terms of the contract.  *Exxon Shipping Co. v. Exxon Seamen's Union*, 788 F. Supp. 829, 835 (D.N.J. 1992).

IV.  **DISCUSSION**

Respondents argue that the award should be set aside because it was not supported by the evidence, the arbitrator acted outside the scope of his authority, and the arbitrator did not find that respondents were entitled to a refund of contributions to Union funds on behalf of the Union superintendents.  The first two arguments advanced by respondents are closely related.  Respondents argue that the award was not supported by the evidence, and the arbitrator acted outside of his authority, because: (1) Dynasty is not bound by the current long form collective bargaining agreement, (2) Dynasty is an independent contractor, and (3) Dynasty did not form Vision.  Petitioner responds that the arbitrator properly considered and rejected respondents' position and decided only issues within the scope of his authority.

A.   **The Collective Bargaining Agreement**

Respondents' primary argument is that Dynasty is not bound by the current long form collective bargaining agreement.  As a threshold matter, this argument was a question for the arbitrator in the first instance.  *See Buckeye Check Cashing v. Cardegna*, 546, U.S. 440, 445-46 (2006) ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance").  Accordingly, the arbitrator was acting within his authority when he determined that Dynasty was bound by the current long form collective bargaining agreement.

The conclusion that Dynasty is bound by the current long form collective bargaining agreement draws its essence from the short form agreement entered into by Dynasty in 2001.  As the arbitrator correctly observed, the short form agreement contains an evergreen clause, which provides that the short form agreement "shall continue in full force and effect" for the duration of

4

the long form agreement and "shall be deemed renewed on the same basis" as the long form agreement "unless at least 90 days before termination of the . . . agreement, either party notifies the other in writing of cancellation." Petition, Ex. A.  The arbitrator also appropriately relied on the uncontested facts that Dynasty, through its then president, entered into the short form agreement and that Dynasty did not terminate the short form agreement.  Petition, Ex. C at 11.

Respondents' challenge to the continuing operation of the short form agreement is a direct challenge to the duration of Dynasty's collective bargaining obligations and was therefore appropriately presented to the arbitrator.  *New Jersey Bldg. Laborers Statewide Benefit Funds and the Trustees Therof v. American Coring & Supply,* 341 Fed. Appx. 816, 820 (3d Cir. July 27, 2009) (characterizing the argument that a collective bargaining agreement had expired as "a facial attack on the contract" that was therefore "a question that had to be presented to the arbitrator in the first instance").  Respondents also argue that Dynasty was not obligated to comply with the current long form collective bargaining agreement because it was not provided notice when that agreement was renegotiated and modified in 2007.  This argument lacks merit, because courts have consistently upheld the validity of evergreen clauses similar to the one contained in the short form agreement entered into by Dynasty.  *See e.g. Elec. Workers Local 58 Pension Trust Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 653 (6th Cir. 2000); *Cedar Valley Corp. v. NLRB*, 977 F.2d 1211, 1219-20 (8th Cir. 1992).

Respondents' argument that Dynasty is not bound by the short form agreement because it was not executed by Mr. Struble similarly lacks merit because it is uncontested that the short form agreement was signed by a principal of Dynasty.  Finally, respondents argue that the current long form agreement does not bind Dynasty because it is an independent contractor, and

therefore is not bound to the long form agreement by virtue of being a member of the Building Contractors Association of New Jersey. This argument fails because the source of Dynasty's collective bargaining obligations is not its membership in any particular group. The source of Dynasty's obligations is the short form agreement entered into by Dynasty, which expressly incorporates the terms of the long form agreement by reference. *See* Petition, Ex. A (incorporating by reference the terms of "every current collective bargaining agreement between the . . . Regional Councils . . . and the Building Contractors Association of New Jersey"); *Mary Thompson Hospital*, 296 N.L.R.B. 1245, 1246-47 (N.L.R.B. 1989) (concluding for purposes of a grievance involving a life insurance plan incorporated by reference in a collective bargaining agreement that "the word 'incorporate' means, of course, that all provisions in the plan become part of the contract itself").

### 1. The Double-Breasting Provision

The double-breasting clause of the long form collective bargaining agreement bars a signatory employer and "its members, officers, and supervisory personnel" from creating or operating a "new or double-breasted corporation[] for the purposes of avoiding the obligations" of the agreement. Petition, Ex. B, at Article XIX, Section 4. Respondents contend that Vision is not bound by this provision because Vision was not formed by Dynasty. This factual contention is respondents' only argument that specifically challenges the arbitrator's conclusion that Dynasty and Vision together constitute an improper double-breasted entity.[1]

Although respondents argue that Vision was not formed by Dynasty, they do not

---

[1] Respondents' remaining arguments, which are discussed above in detail, focus on the applicability of the long form collective bargaining agreement to Dynasty.

challenge the Union's detailed explanation of the ownership structure of Vision and Dynasty.  In 2003, when Vision was formed, Dynasty was owned by Paul Lowenstein, Richard Lowenstein, and Dave Marinaro.  Vision was owned by Paul Lownstein (40% share), Richard Lowenstein (40% share), Dave Marinaro (15% share) and John Struble (5% share).  In 2005, Struble and Marinaro became equal owners of both Dynasty and Vision.  Struble subsequently became the sole owner of both Dynasty and Vision.  Thus, with the exception of Mr. Struble's 5% interest in Vision at the time of its formation, Vision and Dynasty have been wholly owned and controlled by the same individuals at all times.

The evidence presented before the arbitrator established that the renovation projects at issue were awarded to Vision.  Petition Ex. C at 9-10.  The project superintendents used by Vision on the renovation projects were given Vision business cards, credit cards, and company vehicles and supervised non-Union subcontractors hired by Vision.  *Id*. at 10, 12.  However, the project superintendents were paid by Dynasty, not Vision, and were Union members who were paid Union wages and benefits.  *Id*. at 10.

    a.    <u>The Arbitrator's Conclusion</u>

Against this factual backdrop, the arbitrator appropriately concluded that "[t]aken together with the appearance of Vision's prominent position (vehicles, business cards and credit cards) Dynasty's act of paying the supervisor[s] for work performed by its non-union entity fits the classic definition of double-breasting." *Id*. at 12.  The arbitrator's conclusion that Dynasty and its owners are prohibited from operating Dynasty and Vision as a double-breasted entity draws its essence from the double-breasting provision of the collective bargaining agreement.  Pursuant to that clause, a signatory employer represents that not only the employer, but also "its

members, officers, and supervisory personnel will not attempt to form or participate in the creation of or operation of" double-breasted corporations "for the purposes of avoiding" collective bargaining obligations.  Petition at Ex. B, Article XIX, Section 4.  Accordingly, the arbitrator's conclusion that Dynasty and its shareholders (who owned 95% of Vision at the time of its formation and 100% of Vision at the time of the challenged renovation projects) are bound by Article XIX, Section 4 draws its essence from the collective bargaining agreement.

The arbitrator also appropriately concluded that "[b]ased on the record, Dynasty and Vision constitute a single employer, operating a single and integrated enterprise under a common ownership."  Petition Ex. C at 12.  Respondents do not specifically challenge this conclusion and it is well supported by the record.  "The elements for a finding of single employer status are closely analogous to the elements for a finding of alter ego status."  *Eichleay Corp. v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 944 F.2d 1047, 1059-60 (3d Cir. 1991). Indeed, the Third Circuit has characterized the "'integrated enterprise test' for the presence of a single employer" as "a sort of labor-specific veil-piercing test."  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).  The single employer test is used in a variety of contexts, including "to determine whether an employer ha[s] impermissibly 'double-breasted' operations so as to avoid the obligations of a collective bargaining agreement."  *Id*. at 486.

In order to determine whether two nominally independent enterprises, "in reality, constitute only one integrated enterprise" four factors are considered.  *NLRB v. Browning Ferris Indus.*, 691 F.2d 1117, 1122 (3d Cir. 1982).  The factors are: "(1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership."  *Id*.  The use by Vision of Union project superintendents paid by Dynasty, but given

Vision business cards, credit cards, and company vehicles, to supervise non-Union subcontractors hired by Vision reflects a close integration of operations, centralized control of both union and non-union labor relations, and common management between Vision and Dynasty, which as noted above, have shared common owners since the inception of Vision. Accordingly, the arbitrator's double-breasting conclusion both draws its essence from the collective bargaining agreement and is supported by the factual record.

  b. <u>The Arbitrability of the Double-Breasting Issue</u>

In light of the ownership structure of Vision and Dynasty, and the factual record regarding the renovation projects at issue, the arbitrator unquestionably acted within his authority when addressing the double-breasting issue with respect to Dynasty. *Eichleay Corp. v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 944 F.2d 1047, 1058-59 (3d Cir. 1991). In *Eichleay*, the Third Circuit concluded that a broad "all grievances clause" that did not except alter ego issues allowed an arbitration panel to properly consider whether a collective bargaining agreement signatory "created an alter ego company" to avoid its "responsibilities under the collective bargaining agreement." *Id*. However, although an arbitrator's alter ego determination can bind the signatory itself, ordinarily "a nonsignatory cannot be bound to a collective bargaining agreement under an alter ego theory unless the district court has, as a condition precedent, made the alter ego determination." *Id*. at 1059.[2]

---

[2] Although respondents argue that Dynasty and Vision are not a single employer, they do not contend before this Court – nor did they contend before the arbitrator – that Vision was entitled to a judicial determination of whether Dynasty and Vision constitute a single employer prior to submitting to arbitration. *See* Respondents' Memorandum of Law at 9-10 (arguing only the merits of the single employer issue based on respondents' contention that Vision was not formed by Dynasty); Certification of Raymond G. Heineman, Ex. G (Respondents' Brief to the Arbitrator) at 4-5 (noting that the Union appeared "to be pursuing a theory either of alter ego or

B. The Refund Request

Respondents also argue that the arbitrator erred when he did not find that they were entitled to a refund of contributions they made to Union funds on behalf of Union members working as project superintendents. Respondents have not established that their refund request was properly raised as an issue before the arbitrator. Although respondents argued that they were entitled to a refund in response to the specific issues before the arbitrator in the Union grievance, the refund request is a separate issue which should have been presented to the arbitrator as an issue for arbitration in accordance with the arbitration procedure established by the collective bargaining agreement. Because the refund request was not an issue presented to the arbitrator for decision, he did not reach it, and there is no ruling on the request for this Court to review.[3]

---

single employer" liability against Vision and arguing on the merits that "neither applies to the instant case" without contesting the authority of the arbitrator to determine whether Dynasty and Vision were in fact a single employer).

By participating in the arbitration, and arguing the merits of its single employer position to the arbitrator, Vision has waived any entitlement it may have had to a judicial determination of that issue before submitting to arbitration. *See United Indus. Workers v. Gov't of the Virgin Islands*, 987 F.2d 162, 168 (3d Cir. 1993) (finding that "because arbitrators derive their authority from the contractual agreement of the parties, a party may waive its right to challenge an arbitrator's authority to decide a matter by voluntarily participating in an arbitration"); *Nordell Int'l Resources Ltd. v. Triton Oil*, 1996 U.S. App. LEXIS 11594, * 6 (9th Cir. May 3, 1996) (observing that "[a] party impliedly waives its right to an independent judicial determination of alter ego liability if it appears before an arbitration panel to assert that it is not an alter ego"); *Hicks v. Bank of America, N.A.*, 218 Fed. Appx. 739, 746 (10th Cir. Feb. 21, 2007) (finding that by participating in an arbitration, a non-party to a note containing an arbitration clause "waived its objection to arbitration and [was] estopped from arguing that the arbitrator lacked personal jurisdiction to enter an award against it"). As a result, Vision, like Dynasty, is bound by the arbitrator's decision. *United Indus. Workers*, 987 F.2d at 168 (finding that a Union which "participated in the arbitration hearing without voicing objection to the arbitrator's authority to decide the matter . . . waived its right to challenge the arbitrator's jurisdiction").

[3] The Court notes that pursuing a separate grievance regarding the request does not appear especially promising, in light of the fact that the collective bargaining agreement has a clause specifically addressing foremen, which petitioner argues covers the Union superintendents, and

**V.     ORDER**

For the foregoing reasons, it is **ORDERED** that petitioner's motion to confirm the arbitration award is granted.

**IT IS FURTHER ORDERED** that respondents' cross-motion to set aside the arbitration award is denied.

/s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.

---

the fact that Dynasty has made contributions to Union funds on behalf of Union superintendents without objection for at least five years.  *See* Petition Ex. B. Article XXX; Petition Ex. C. at 10.

11